Peter W. Ito (Cal. Bar No. 152983)
Sandi Colabianchi (Cal. Bar. No. 193872)
Megan M. Adeyemo (Co. Bar No. 36721) (Admitted *Pro Hac Vice*)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for One Vision Park, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | ) Case No.: 09-31130 TEC |
| | ) Chapter 11 |
| ONE VISION PARK, INC., | ) |
| | ) Date: October 13, 2009 |
| Debtor. | ) Time: 9:30 a .m. |
| | ) Judge: Thomas E. Carlson |
| | ) Place: Courtroom 23 |

## FIRST APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEYS FOR DEBTOR

**TO THE HONORABLE THOMAS E. CARLSON, UNITED STATES BANKRUPTCY JUDGE:**

One Vision Park, Inc. ("Debtor"), by and through its counsel, Gordon & Rees, LLP ("G&R" or "Applicant"), hereby files its First Application for Interim Compensation and Reimbursement of Expenses by Attorneys for Debtor (this "Application") and states as follows:

1. **NOTICE.**

Notice of the hearing on this Application is being provided by your Applicant pursuant to Local Bankruptcy Rules 2002-1 and 9014-1 and Fed. R. Bankr. P. 2002 to the following parties in interest in this case: Steve Jaca, the natural person responsible for the duties and obligations of the Debtor pursuant to Local Bankruptcy Rule 4002-1;

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

counsel for the Official Committee of Unsecured Creditors (the "Committee"); the office of the United States trustee in San Francisco, California; and any party in interest that filed with the Clerk of the Court a request for special notice.

2.  **INTRODUCTION.**

Applicant is a limited liability partnership, with attorneys duly admitted to practice before this Court. Applicant is the attorney for the debtor and debtor in possession in the above-captioned bankruptcy case, having been so employed by order of this Court authorizing and approving such employment. As such, Applicant has performed various legal services for the Debtor, some of the particulars of which are hereinafter set forth.

3.  **EMPLOYMENT AUTHORIZATION.**

On June 15, 2009, this Court entered its Order Granting Ex Parte Application for Order Authorizing the Employment of Gordon & Rees LLP as Counsel for Debtor *Nunc Pro Tunc* to May 27, 2009 [Docket No. 112] (the "Employment Order"), which authorized the Debtor to employ Applicant on an hourly basis to provide aid and assistance in the administration of this case, to provide continued representation in all negotiations and proceedings involving creditors and other parties in interest, to prepare and assist in the confirmation of a plan, and to represent the Debtor in all other legal aspects of the Chapter 11 case. A copy of the Employment Order is attached hereto as **Exhibit A** and by this reference incorporated herein.

4.  **APPLICANT'S ATTORNEYS' FEES AND EXPENSES.**

Applicant seeks interim approval of its attorneys' fees and expenses incurred in this Chapter 11 case from May 27, 2009, through August 31, 2009 (the "Fee Period"), in

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

2

the amount of $480,209.00 in fees and $11,724.76 in expenses. These attorneys' fees and expenses can be broken down on a monthly basis as follows:

| Month | Fees | Expenses | Total |
|-------|------|----------|-------|
| May | $45,910.50 | $85.15 | $45,995.65 |
| June | $206,752.00 | $544.18 | $207,296.18 |
| July | $131,492.00 | $11,095.43 | $142,587.43 |
| August | $96,054.50 | $0.00 | $96,054.50 |
| **Total** | **$480,209.00** | **$11,724.76** | **$491,933.76** |

5.    **ASSETS OF THE ESTATE.**

As of September 15, 2009, Debtor has cash on hand of approximately $3,478,618.94.

6.    **ESTIMATED ACCRUED EXPENSES OF ADMINISTRATION.**

Other than the accrued professional fees and expenses of Applicant and counsel for the Committee, which are summarized below, Applicant is informed that the Debtor is paying its post-petition expenses, if any, as they become due in the ordinary course of business. As of this writing, the Debtor has $0.00 in post-petition payables, not including professional fees and expenses of Applicant and counsel for the Committee.

The following is a summary of the compensation requested by the estate's professionals:

| Applicant Address | Fees and Expenses Requested |
|-------------------|-----------------------------|
| **Debtor's Bankruptcy Counsel** | |
| Gordon & Rees LLP 275 Battery Street, Suite 2000 San Francisco, California 94111 | Fees: $480,209.00 Expenses: $11,724.76 Subtotal: $491,933.76 Less retainer: $0.00 |

3

| | Net Request: $491,933.76 |
|---|---|
| | Application Period: May 27, 2009 through August 31, 2009 |
| **Creditors' Committee Counsel** | |
| Kornfield, Nyberg, Bendes & Kuhner, P.C.<br><br>1999 Harrison Street, Suite 2675<br><br>Oakland, California 94612 | Fees: $66,413.75<br><br>Expenses: $27.70<br><br>Subtotal: $66,441.45<br><br>Less retainer: $0.00<br><br>Net Request: $66,441.45<br><br>Application Period: June 12, 2009, through September 9, 2009 |

All of the foregoing professionals have continued to provide services subsequent to their particular application period which will be the subject of subsequent applications to the Court.

7. **HISTORY AND DESCRIPTION OF DEBTOR'S BUSINESS.**

Debtor filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on April 30, 2009 (the "Petition Date").

Debtor continues to operate its business and manage its property as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

The Committee was appointed on May 29, 2009. No other committees have been appointed herein.

Debtor was formed in November 2004 for the purpose of acquiring and developing certain land in southern Solano County. The land (approximately 2,765.68 acres) was purchased by Sacramento Municipal Utility District ("SMUD") from Dow Chemical Company for $12 million to allow SMUD to expand the wind energy project

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

that it operates on adjacent contiguous property and to ensure protection of its wind energy resources.

On December 10, 2004, Debtor and SMUD entered into an Option to Purchase Real Property (the "Option Agreement") and a Memorandum of Agreement, which was recorded in the Official Records of Solano County on December 10, 2004 as Document No. 2004400177388.

Pursuant to the Option Agreement, Debtor was granted the right to purchase a portion of the land defined as "Parcel A," which consists of approximately 1,311 acres, within four years for a purchase price of $4 million ("Option 1") and the right to purchase "Parcels B-1" and "B-2," consisting of approximately 1,357.68 acres, within seven years for an $8 million purchase price ("Option 2").

Debtor intended to develop the land into a green industrial park with a wharf and dock facilities, and a waste-to-energy facility, along the Sacramento River. During the period between 2005 to 2008, Debtor diligently worked towards the development of such uses.

In the latter part of 2008, Debtor elected to exercise Option 1 and entered into discussions with SMUD regarding the timing of the purchase. As a result, SMUD and Debtor entered into an Agreement and Escrow Instructions for Purchase and Sale of Property (the "SMUD Agreement") on December 5, 2008.

The SMUD Agreement replaced and superseded all portions of the Option Agreement concerning Option 1 and Option 2 and provided for the opening of an escrow and the respective closing requirements and obligations of the parties concerning the sale of Parcel A to Debtor. The purchase price for Parcel A remained $4 Million and was

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

5

payable one business day prior to the closing date, which was identified as December 10, 2008, subject to certain extensions as provided therein. The SMUD Agreement also obligated Debtor to pay SMUD's past legal fees in the amount of $85,000 at the closing.

Section 3.13.1 of the SMUD Agreement provided for an extension of the deadline to close the purchase of Parcel A from December 10, 2008, to January 16, 2009, provided that Debtor (i) deliver notice of the extension in writing to SMUD and (ii) pay SMUD the sum of $185,000 -- $85,000 for past legal fees and $100,000 as consideration for the extension (the "First Extension").

Debtor exercised the First Extension on December 5, 2008, by delivery of the required notice and tendering the required payment of $185,000.

Section 3.13.2 of the SMUD Agreement further provided for a second extension of the closing to May 1, 2009, provided that Debtor surrender the option for the purchase of Parcel B and terminate certain leases held by David Papera (a shareholder and officer of Debtor) for grazing and livestock purposes (the "Second Extension") and agree to increase the purchase price for Parcel A to $4.2 million. The SMUD Agreement provided that the First Extension and the Second Extension were not mutually exclusive.

On January 9, 2009, Debtor and SMUD executed an Amendment to Agreement and Escrow Instructions for Purchase and Sale of Property (the "First Amendment").

The First Amendment provided, among other things, for (a) an extension to the closing deadline for the purchase of Parcel A from January 16, 2009 to January 23, 2009, and (b) an extension to Debtor's deadline to exercise the Second Extension from January 9, 2009 to January 20, 2009.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

On January 21, 2009, Debtor and SMUD executed Amendment No. 2 to Agreement and Escrow Instructions for Purchase and Sale of Property (the "Second Amendment").

The Second Amendment provided for, among other things, (a) an extension of the closing deadline for the purchase of Parcel A from January 23, 2009 to coincide with the recording of a certificate of compliance in connection with a lot line adjustment ("Lot Line Adjustment") being processed by SMUD, and (b) an extension to the deadline to exercise the Second Extension to the date which is three days after SMUD obtained approval of the Lot Line Adjustment and received a certificate of compliance from Solano County. SMUD obtained approval of the Lot Line Adjustment and a certificate of compliance for recordation on or about April 3, 2009.

On April 3, 2009, Debtor timely executed the Second Extension. Accordingly, the deadline to close on the purchase of Parcel A was extended to May 1, 2009 and the purchase price of Parcel A was increased to $4.2 million.

During this period, Debtor was negotiating a potential sale or financing of the purchase of Parcel A with a number of other entities. Debtor determined that its best option was a sale of Parcel A to a third party. The offers Debtor received for the purchase of Parcel A ranged from $10 to $15 million.

8.      **EVENTS IN THE CHAPTER 11 CASE.**

In light of deadlines facing the Debtor, the case was commenced on April 30, 2009. As a result of the Debtor's bankruptcy case, the deadline to purchase Parcel A was extended up to and including June 29, 2009 pursuant to § 108(b) of the Bankruptcy Code.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

7

Postpetition, Debtor continued its negotiations with several potential purchasers. Debtor decided to accept an all cash offer of $15 million from Bill Kearney ("Kearney"). Debtor and Kearney entered into a Purchase Agreement on May 23, 2009 (the "Kearney Agreement").

Pursuant to the Kearney Agreement, Kearney was required to pay $15 million as follows: $50,000 in earnest money and $14,950,000 to be paid in certified funds, due at close of escrow. The Kearney Agreement provided for closing within five days of an order approving the sale but no later than June 22, 2009.

On May 26, 2009, Debtor filed its Motion to Sell/Auction Real Property of the Estate (the "Sale Motion"). The Sale Motion was set for a hearing on June 15, 2009 at 9:30 a.m.

From the Petition Date to May 27, 2009, Debtor was represented by Arlo H. Smith and the Law Offices of Arlo H. Smith (collectively, "Smith"). Smith[1] did not specialize in bankruptcy or reorganizations. As a result, Debtor engaged Gordon & Rees LLP to act as its general bankruptcy counsel on May 27, 2009.

Shortly thereafter, Debtor, with Applicant's assistance determined that the Kearney Agreement did not contain many of the provisions typically found in a § 363 sale agreement. To ensure that the purchase agreement fully and adequately protected the Debtor, Debtor and Ultimate Alliance, LLC ("Ultimate")[2] negotiated and executed a revised Purchase and Sale Agreement and Escrow Instructions (the "Ultimate Purchase Agreement") to replace the Kearney Agreement.

---

[1] Smith never filed an employment application.
[2] Ultimate was substituted as the Buyer in the Purchase Agreement.

8

While Debtor was negotiating the Ultimate Purchase Agreement, Debtor prepared and filed a Motion for Order Approving Overbid Procedures and Related Matters for the Sale of Property of the Estate [Docket No. 59] (the "Procedures Motion"). A hearing on the Procedures Motion was held on June 4, 2009, after which the Court entered an order approving bid procedures [Docket No. 84] (the "Procedures Order").

Debtor also filed a Motion for Order Approving Sale of Property of the Estate [Docket No. 71] (the "Revised Sale Motion") and a Motion for Order Authorizing the Assumption of Agreement with the Sacramento Municipal Utility District [Docket No. 68] (the "Revised Assumption Motion").

At the hearing on the Procedures Motion, SMUD argued that Debtor could not assume the SMUD Agreement because the SMUD Agreement expired, by its terms, on May 1, 2009. As a result, the Court required the parties to prepare and file briefs on the application of § 108(b) and the effect thereof on the SMUD Agreement. Due to the expedited nature of Debtor's case, the Court required the briefs to be filed within a very short timeframe. While preparing their briefs, Debtor and SMUD entered into negotiations to resolve the issue amicably. As a result, Debtor and SMUD agreed that Debtor would have up to and including July 15, 2009 to consummate its purchase of Parcel A. In exchange, Debtor agreed, among other things, to pay SMUD $4.8 million to purchase Parcel A (the "First Settlement"). Debtor prepared and filed a motion to approve the settlement agreement [Docket No. 98] (the "First Settlement Motion").

On June 16, 2009, the Court entered orders granting the Revised Sale Motion [Docket No. 115] (the "Sale Order"), approving the Revised Assumption Motion [Docket No. 116] and approving the First Settlement [Docket No. 117].

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

9

The Sale Order authorized the sale of Parcel A to Ultimate and authorized Debtor to enter into and perform under the Ultimate Purchase Agreement. The Sale Order further provided that, if the sale to Ultimate did not close as required, Debtor may sell Parcel A to any other buyer at the discretion of Debtor and the Committee.

Debtor continued its efforts to ensure that it met all of its obligations under the Ultimate Purchase Agreement, including the preparation of closing documents. Debtor met all of its obligations under the Ultimate Purchase Agreement but Ultimate did not. As a result, Debtor terminated the Ultimate Purchase Agreement and sought turnover of Ultimate's $200,000 deposit.[3] On July 2, 2009, Debtor filed its Ex Parte Application for Order Shortening Time for Hearing on Motion for Contempt Against Ultimate Alliance, LLC and its Members [Docket No. 138] (the "Contempt OST"). Debtor intended to file a motion for contempt against Ultimate and its members for failing to execute a release of the deposit required by Debtor's escrow agent, First American Title Insurance Company National Commercial Services ("First American"). At the hearing on the Contempt OST, the Court directed Debtor and Ultimate to prepare an order directing release of the funds and submit the order to the Court. On July 2, 2009, the Court entered its Order Directing Release of Funds [Docket No. 140].

Debtor did not believe that it would be able to complete negotiations with any of the parties interested in purchasing Parcel A by July 14, 2009. As a result, Debtor and SMUD negotiated an additional agreement (the "Second Settlement") that provided Debtor with the opportunity to purchase two thirty-day extensions of the July 14th deadline for $200,000 each.

---

[3] Pursuant to the Ultimate Purchase Agreement, Ultimate's deposit became property of the estate upon termination of the Ultimate Purchase Agreement.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

10

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

On July 13, 2009, Debtor filed a Motion to Approve (I) Second Settlement Agreement with Sacramento Municipal Utility District; and (II) Use of Property of the Estate [Docket No. 143] (the "Second Settlement Motion"). In the Second Settlement Motion, Debtor requested authority to enter into the Second Settlement and to use the $200,000 Debtor received after termination of the Ultimate Purchase Agreement to purchase the first thirty-day extension from SMUD. The Court entered an order approving the Second Settlement Motion on July 14, 2009 [Docket No. 147] and Debtor promptly transferred the $200,000, less escrow fees deducted by First American, to SMUD.

Debtor continued its efforts to secure a buyer for Parcel A and on July 17, 2009, entered into a Purchase and Sale Agreement and Escrow Instructions (the "VPI Purchase Agreement") with Vision Park International, Inc. ("Vision Park"). Pursuant to the VPI Purchase Agreement, Vision Park deposited $200,000 into escrow with First American and was required to deposit an additional $4.8 million in readily available funds into escrow on or before 2:00 p.m. (Pacific time) on July 24, 2009 (the "Additional Deposit"). The Debtor timely and fully performed all of its obligations under the VPI Purchase Agreement. In contrast, Vision Park breached the VPI Purchase Agreement by failing to timely submit the Additional Deposit. Based on this default, Debtor terminated the VPI Purchase Agreement.

Pursuant to the VPI Purchase Agreement, the $200,000 deposit made by Vision Park became property of the estate. On July 30, 2009, Debtor filed its Ex Parte Application for Order Shortening Time for Hearing on Motion (I) Finding Vision Park International, Inc. to be in Default of Purchase and Sale Agreement and Escrow

11

Instructions and (II) Ordering First American Title Insurance Company National Commercial Services and its Affiliated and Related Entities to Release Deposit to Debtor [Docket No. (the "VPI Turnover OST"). At the hearing, the Court ordered that the funds could be released from escrow. As a result, Debtor received the $200,00 deposit made by Vision Park. Debtor used these funds, less the escrow fees deducted by First American, to purchase the second thirty-day extension from SMUD. The second thirty-day extension required the Debtor to consummate the acquisition of Parcel A from SMUD no later than September 14, 2009. SMUD made clear to the Debtor that this was the last extension it would grant.

Although Debtor was receiving a significant amount of interest in Parcel A, Debtor felt that it needed assistance marketing Parcel A to prospective buyers. Debtor interviewed a number of brokers and decided to employ NAI BT Commercial ("NAI BT") to act as Debtor's broker. On August 4, 2009, Debtor filed an application to employ NAI BT pursuant to § 327(a) of the Bankruptcy Code [Docket No. 155] (the "BT Motion"). The NAI BT Motion is pending.

NAI BT immediately commenced its efforts to market Parcel A. NAI BT negotiated a potential purchase with several interested parties. However, the only party to make an offer was Zelman Solano, LLC ("Zelman"). Debtor decided to move towards accepting an offer from Zelman for $9.5 million total consideration on the terms contained in a Purchase and Sale Agreement and Escrow Instructions (the "Zelman Agreement"), between Debtor, on one hand, and Zelman on the other.

During the Debtor's marketing process, First American informed Debtor that it believed that the Sale Order did not give Debtor the necessary authority to enter into a

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

12

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

purchase agreement with a new buyer. First American would thus require an amended Sale Order prior to closing any sale of Parcel A. On August 26, 2009, Debtor filed its Motion for Amended Order Approving Sale of Property of the Estate [Docket No. 164] (the "Amended Order Motion"). The Court set a hearing on the Amended Order Motion for September 2, 2009 (the "Second Sale Hearing").

Pursuant to the Zelman Agreement, Zelman was required to deposit $1 million into escrow with First American on or before August 28, 2009. Debtor was not bound by the Zelman Agreement until such $1 million deposit became non-refundable by the terms of the Zelman Agreement. Zelman did not deposit $1 million into escrow as required.

On or about August 29, 2009, Debtor received another offer from Greenport Energy Park, LLC ("Greenport"), to purchase Parcel A for $8.5 million total consideration. At the Second Sale Hearing, the Court approved the sale of Parcel A to Greenport and Debtor executed a Purchase and Sale Agreement and Escrow Instructions with Greenport (the "Greenport Agreement").

The closing of the sale of Parcel A to Greenport occurred on September 4, 2009. Debtor received approximately $3.5 million in sale proceeds.

9.      **PRESENT POSTURE OF THE CASE.**

Since the sale to Greenport, the Debtor has conferred with the Committee regarding preparation of Debtor's plan and disclosure statement. The parties have agreed that the Committee shall take the laboring oar in the preparation of a joint plan of liquidation. The plan will provide for the distribution of the Sale Proceeds to creditors pursuant to the priorities set forth in the Bankruptcy Code. The Debtor and the

13

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Committee shall work together on reviewing and, where necessary, objecting to claims making sure not to duplicate efforts.

The last day for creditors to file proofs of claim was September 8, 2009. The Debtor is prepared to immediately review all claims and contest all objectionable claims.

Based on presently available assets, estimated liabilities and anticipated expenses of administration, it appears that general unsecured creditors in this case will be paid approximately percent (50%) of their claims and, based on the results of the claims objection process, perhaps more or less. This represents just an estimate and is subject to change.

10.     **PROJECT BILLING.**

Applicant has included the following project billing categories in this Application:

a.     **CASE ADMINSTRATION**

This project billing category includes matters of administration of the case. During this Fee Period, Applicant (i) prepared a designation of responsible individual, Debtor's monthly operating report and Debtor's amended schedules, (ii) attended Debtor's initial debtor interview, § 341 meeting of creditors and initial status conference, and (iii) conferred with the U.S. Trustee regarding documents requested at initial debtor interview and § 341 meeting of creditors. In addition, Debtor prepared several documents necessary to update Debtor's registration with the California Secretary of State.

**Sub-category Summary**

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the

14

individual professional who performed specific services by the initials of such

professionals and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 3.80 | $2,090.00 |
| S. M. Colabianchi, Senior Counsel | $375.00 | 4.70 | $1,762.50 |
| M. M. Adeyemo, Associate | $275.00 | 27.40 | $7,535.00 |
| L. Sides, Paralegal | $185.00 | 40.30 | $7,455.50 |
| A. C. Tafoya, Paralegal | $185.00 | 2.10 | $ 388.50 |
| **Total Fees Requested in the Category** | | **78.30** | **$19,231.50** |

### b. ASSET DISPOSITION.

This project billing category includes matters related to the sale of Parcel A. As

described above, the sale of Parcel A was a lengthy process that required a substantial

majority of Applicant's efforts during this Fee Period.  In accordance with the Guidelines

and for ease of understanding, this project billing category is divided into the following

sub-categories:

### i.  **Stalking Horse Buyer**

Prior to Applicant's engagement as Debtor's general bankruptcy counsel, Debtor

was represented by Smith and had entered into the Kearney Agreement.  To protect the

Debtor's interests, Applicant negotiated and prepared a new agreement with Ultimate (as

designee of Kearney).   Specifically, Applicant drafted and negotiated the Ultimate

Purchase Agreement, prepared the Revised Sale Motion, the Sale Order and an

application for order shortening time for hearing on same, and performed due diligence

15

on Ultimate's corporate standing and ability to fund. Applicant also discussed the sale process with certain parties in interest, including a party that filed a limited objection requesting the insertion of certain language into the sale order.

Applicant used its best efforts to respond timely to all of Ultimate's inquiries regarding title and due diligence questions. Applicant's efforts were also geared towards ensuring that Debtor met all of its obligations under the Ultimate Purchase Agreement, including the preparation and execution of the closing documents.

Ultimate failed to meet its obligations under the Ultimate Purchase Agreement. As a result, this sub-category includes Applicant's efforts related to Ultimate's compliance with the Ultimate Purchase Agreement, including conferring with Ultimate's counsel regarding the Ultimate's obligations under the Ultimate Purchase Agreement and it's ability to perform such obligations.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 36.80 | $20,240.00 |
| E. C. Young, Partner | $400.00 | 34.10 | $13,640.00 |
| S. M. Colabianchi, Senior Counsel | $375.00 | 2.40 | 900.00 |
| M. M. Adeyemo, Associate | $275.00 | 31.70 | $8,717.50 |
| E. C. Chavez, Law Clerk | $185.00 | 3.40 | $629.00 |
| L. Sides, Paralegal | $185.00 | 21.70 | $4,014.50 |

16

| | | | |
|---|---|---|---|
| **Total Fees Requested in this Category** | | 130.10 | $48,141.00 |

### ii.  Bidding and Sale Procedures

An auction process is generally the best and most efficient means of maximizing the value of estate assets.  As a result, Applicant prepared the Procedures Motion, which included drafting an application for order shortening time for hearing on the Procedures Motion.  In addition, Applicant attended hearings on both the application for order shortening time and the Procedures Order.  Applicant also conferred with Debtor, the Committee and counsel for Ultimate regarding the bidding process and timeline.  Debtor received several bids as required by the Procedures Motion.  Applicant assisted Debtor's review of such bids, including conducting interviews with each bidder regarding their respective bids and conferring with the Committee concerning same.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 11.40 | $6,270.00 |
| E. C. Young, Partner | $400.00 | 8.30 | $3,320.00 |
| S. M. Colabianchi, Senior Counsel | $375.00 | 3.10 | $1,162.50 |
| M. M. Adeyemo, Associate | $275.00 | 38.10 | $10,477.50 |
| E. C. Chavez, Law Clerk | $185.00 | 1.60 | $296.00 |

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

17

| L. Sides, Paralegal | $185.00 | 2.80 | $518.00 |
|---|---|---|---|
| **Total Fees Requested in this Category** | | **65.30** | **$22,044.00** |

### iii.    Due Diligence Documents and Data Room

To assist prospective purchasers, Applicant created and maintained a data room on a website designed and hosted at no charge by Applicant that contained all of the documents a reasonable purchaser would expect to be able to review.  This sub-category contains all of Applicant's time and efforts with regard to the due diligence documents and data room.  Specifically, Applicant created the website to use as a data room and provided access to all interested purchasers, which included organizing and uploading all of the documents.  Applicant added and removed documents from the data room website as necessary as the case progressed.  Applicant also assisted interested buyers with access to the site and, at times, provided electronic copies on discs for certain bidders.

Applicant further prepared and updated a list of all of the documents contained in the data room to attach to the various purchase agreements executed by Debtor.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| E. C. Young, Partner | $400.00 | 2.30 | $920.00 |
| J. B. Ryan, Partner | $400.00 | 13.00 | $5,200.00 |
| M. M. Adeyemo, Associate | $275.00 | 4.90 | $1,347.50 |

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

18

| | | | |
|---|---|---|---|
| L. Sides, Paralegal | $185.00 | 46.90 | $8,676.50 |
| **Total Fees Requested in this Category** | | **67.10** | **$16,144.00** |

iv. **Preparations for Closing**

Applicant expended significant efforts preparing for closing on Parcel A. Such efforts include (i) conferring with First American regarding escrow, closing instructions, deposits and other matters; (ii) preparing closing documents for the closing with SMUD and the closing with a purchaser; and (iii) conferring with SMUD and the purchaser regarding closing. Applicant prepared closing documents for the intended sales to Ultimate, Vision Park and Zelman as well as the actual closing with Greenport.

**Sub-Category Summary**

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 5.10 | $2,805.00 |
| E. C. Young, Partner | $400.00 | 30.00 | $12,000.00 |
| J. B. Ryan, Partner | $400.00 | 12.70 | $5,080.00 |
| M. M. Adeyemo, Associate | $275.00 | 2.60 | $715.00 |
| **Total Fees Requested in this Category** | | **50.40** | **$20,600.00** |

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

19

### v. <u>Potential Purchasers</u>

Throughout the Debtor's bankruptcy case, the focus of all professionals has been the sale of Parcel A. Applicant spent a significant amount of time conferring with interested purchasers, including explaining the Procedures Motion and providing information on Parcel A. Applicant also prepared a form purchase agreement for use by potential bidders. Applicant assisted Debtor's review of each bid that was submitted and conferred with the Committee regarding each bid. In addition, Applicant notified each interested purchaser upon the failure of other purchasers to meet their obligations under their respective purchase agreements and conducted negotiations with purchasers that submitted offers.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 101.40 | $55,770.00 |
| E. C. Young, Partner | $400.00 | 59.40 | $23,760.00 |
| J. B. Ryan, Partner | $400.00 | 13.80 | $5,520.00 |
| M. M. Adeyemo, Associate | $275.00 | 30.40 | $8,360.00 |
| L. Sides, Paralegal | $185.00 | 16.50 | $3,052.50 |
| **Total Fees Requested in this Category** | | **221.50** | **$96,462.50** |

In observance of the Court's *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees,* paragraph 7, Applicant has generally

20

complied with the suggested limit of $20,000 in fees per project category. In the foregoing subcategory, Applicant's services have exceeded this $20,000 suggested limit. Applicant represents that it is not able to limit this category to $20,000 because Applicant had contact throughout the Fee Period with many parties interested in purchasing Parcel A, with varying degrees of ability to complete purchase but were ultimately unsuccessful. Further dividing this subcategory to reflect Applicant's services in relation to each prospective bidder would be unduly burdensome and result in an unwieldy and cumbersome Application.

### vi.     Vision Park International

After the failure of Ultimate to meet its obligations under the Ultimate Purchase Agreement, Applicant solicited bids from all parties that had previously expressed interest in Parcel A (see Potential Purchasers explanation above). Debtor accepted an offer from Vision Park and executed the VPI Purchase Agreement. Applicant assisted Debtor with its negotiations with Vision Park, including negotiating the terms of the VPI Purchase Agreement and accompanying note and deed of trust. Applicant also prepared a motion for an amended sale order that would meet the requirements of First American and took the necessary steps to open escrow and begin the closing process.

As described above, Vision Park failed to meet its obligations under the VPI Purchase Agreement. As a result, Applicant prepared (i) correspondence to Vision Park terminating the VPI Purchase Agreement and cancellation of escrow, (ii) an escrow cancellation notice; (iii) conferred with Vision Park's counsel regarding turnover of Vision Park's deposit pursuant to the terms of the VPI Purchase Agreement.

21

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

**Sub-Category Summary**

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 11.30 | $6,215.00 |
| E. C. Young, Partner | $400.00 | 17.20 | $6,880.00 |
| J. B. Ryan, Partner | $400.00 | 5.10 | $2,040.00 |
| M. M. Adeyemo, Associate | $275.00 | 9.80 | $2,695.00 |
| **Total Fees Requested in this Category** | | **43.40** | **$17,830.00** |

### vii.    Forfeit Deposits

Pursuant to the Ultimate Purchase Agreement and the VPI Purchase Agreement, the $200,000 deposits made by Ultimate and Vision Park were forfeited to Debtor and became property of the estate. To ensure that Debtor received each of the deposits, Applicant prepared correspondence to Ultimate and Vision Park demanding execution of the escrow cancellation instructions, which would result in Debtor's receipt of the two deposits. Applicant further prepared a motion for contempt against Ultimate for failure to execute the escrow cancellation instructions and the Contempt OST. Applicant attended a hearing on the application for order shortening time and prepared an order directing the release of Ultimate's deposit.

Applicant further worked towards receiving Vision Park's deposit, including preparation of the VPI Turnover OST.

22

**Sub-Category Summary**

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 2.40 | $1,320.00 |
| E. C. Young, Partner | $400.00 | 3.90 | $1,560.00 |
| J. B. Ryan, Partner | $400.00 | 0.40 | $160.00 |
| M. M. Adeyemo, Associate | $275.00 | 6.90 | $1,897.50 |
| A. C. Tafoya, Paralegal | $185.00 | 0.30 | $55.50 |
| **Total Fees Requested in this Category** | | **13.90** | **$4,993.00** |

### viii.    Marketing of Parcel A

After the failure of Vision Park to comply with the VPI Purchase Agreement, Debtor and the Committee determined that it is in the best interests of the estate to employ a broker to assist Debtor's marketing efforts.   Applicant assisted Debtor's employment of a broker by interviewing potential brokers, conferring with the Committee regarding the proposals made by each broker, and negotiating and revising the listing agreement with NAI BT, the broker that was eventually selected by the Debtor. Upon execution of the listing agreement with NAI BT, Applicant prepared the necessary documents to get the Court's approval of Debtor's employment of NAI BT.   Applicant coordinated and oversaw NAI BT's efforts to market Parcel A, which included reviewing

Case: 09-31130    Doc# 182    Filed: 09/21/09    Entered: 09/21/09 21:42:38    Page 23 of 42

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

NAI BT's proposed marketing materials and daily summaries. Applicant also conferred with NAI BT and the Committee regarding marketing strategy, such as price reductions.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 31.30 | $17,215.00 |
| E. C. Young, Partner | $400.00 | 7.80 | $3,120.00 |
| J. B. Ryan, Partner | $400.00 | 14.20 | $5,680.00 |
| M. M. Adeyemo, Associate | $275.00 | 8.50 | $4,862.00 |
| L. Sides, Paralegal | $185.00 | 10.90 | $2,016.50 |
| **Total Fees Requested in this Category** | | **54.60** | **$32,893.50** |

### ix. <u>Zelman Development</u>

As described above, Debtor's negotiations with Zelman reached a point where Debtor filed a motion to amend the sale order to expressly approve a sale to Zelman. This sub-category contains all of Applicant's efforts regarding the Zelman bid and Zelman Agreement. During the Fee Period, Applicant conducted negotiations with Zelman and NAI BT, reviewed and analyzed Zelman's offer and conferred with the Committee concerning the offer. Applicant prepared the Zelman Agreement as well as a deed of trust and promissory note to accompany same. Also, Applicant assisted Zelman

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

24

with its due diligence by coordinating and troubleshooting Zelman's access to the data room and due diligence documents.

Zelman reduced its purchase price due to some perceived issues discovered while performing due diligence. Applicant analyzed the revised Zelman proposal and advised Debtor regarding same.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 27.70 | $15,235.00 |
| E. C. Young, Partner | $400.00 | 21.80 | $8,720.00 |
| J. B. Ryan, Partner | $400.00 | 19.00 | $7,600.00 |
| M. M. Adeyemo, Associate | $275.00 | 16.50 | $4,537.50 |
| L. Sides, Paralegal | $185.00 | 0.10 | $18.50 |
| **Total Fees Requested in this Category** | | **85.10** | **$36,111.00** |

x. **Greenport Energy Park**

Greenport purchased Parcel A on September 4, 2009. Applicant's efforts in this sub-category relate to the sale of Parcel A to Greenport. Specifically, Applicant assisted Debtor's review of the offer made by Greenport, performed negotiations with Greenport and developed the Greenport Agreement.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

25

In anticipation of Debtor's acceptance of the Greenport Agreement, Applicant prepared a motion for amended sale order that meets the requirements of First American, including a motion to shorten notice for same.

Although substantially included in the "Preparations for Closing" sub-category, Applicant prepared the necessary closing documents and ensured that Debtor complied with the Greenport Agreement.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 4.30 | $2,365.00 |
| E. C. Young, Partner | $400.00 | 10.30 | $4,120.00 |
| M. M. Adeyemo, Associate | $275.00 | 2.70 | $742.50 |
| **Total Fees Requested in this Category** | | **17.30** | **$7,227.50** |

### xi.    Miscellaneous Sale Related Matters

As part of the sale process, Applicant had to ensure that Debtor's due diligence and title related documents were in order.  As a result, Applicant reviewed and analyzed the documents, conferred with outside professionals, such as First American and a surveyor, regarding the documents.   In addition, Applicant performed a number of services that are not properly categorized with the other sub-categories.  Such services are included herein.

26

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Applicant (i) prepared a form purchase agreement, (ii) researched documentary transfer tax exemptions, (iii) reviewed updated title reports and title proforma, (iv) analyzed restrictive covenants to be recorded at closing, (v) conferred with First American regarding waiver of the ten-day stay; (vi) reviewed listing agreements executed by Debtor and researched effect of same; (vii) drafted non-disclosure agreements to be executed by the Committee and potential purchasers; (viii) analyzed zoning issues; (ix) prepared exhibits to purchase agreements and quitclaim deeds related to SMUD portion of transaction; and (x) researched standing of non-winning bidder to object to sale.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 10.70 | $5,885.00 |
| E. C. Young, Partner | $400.00 | 46.10 | $18,440.00 |
| J. B. Ryan, Partner | $400.00 | 5.30 | $2,120.00 |
| S. M. Colabianchi, Senior Counsel | $375.00 | 3.10 | $1,162.50 |
| M. M. Adeyemo, Associate | $275.00 | 22.10 | $6,077.50 |
| L. Sides, Paralegal | $185.00 | 7.60 | $1,406.00 |
| **Total Fees Requested in this Category** | | **94.90** | **$35,091.00** |

c.    **MEETING OF CREDITORS.**

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

27

Applicant's services in the project billing category consisted primarily of communicating with creditors concerning the filing of the Debtor's case, current status, claims bar date and the filing of claims.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended are:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 6.00 | $3,300.00 |
| M. M. Adeyemo, Associate | $275.00 | .40 | $ 110.00 |
| **Total Fees Requested in the Category** | | **6.40** | **$3,410.00** |

### d.    FEE/EMPLOYMENT APPLICATIONS.

Applicant's services in this project billing category consisted of (i) drafting Applicant's employment application and ancillary documents; and (ii) reviewing bankruptcy and local rules concerning the employment of professionals.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended are:

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 0.30 | $165.00 |
| S. M. Colabianchi, Senior Counsel | $375.00 | .60 | $ 225.00 |
| M. M. Adeyemo, Associate | $275.00 | 12.60 | $3,465.00 |
| L. Sides, Paralegal | $185.00 | 4.90 | $906.50 |
| **Total Fees Requested in the Category** | | **18.40** | **$4,761.50** |

### e.  FEE/EMPLOYMENT OBJECTIONS.

Applicant's services in this project billing category consisted of reviewing and responding to U. S. Trustee objection to NAI BT and corresponding with the Committee concerning the objection.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended are:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 1.10 | $ 605.00 |
| M. M. Adeyemo, Associate | $275.00 | .90 | $ 247.50 |
| **Total Fees Requested in the Category** | | **2.00** | **$ 852.50** |

Case: 09-31130   Doc# 182   Filed: 09/21/09   Entered: 09/21/09 21:42:38   Page 29 of 42

**f. BUSINESS OPERATIONS.**

This project billing category includes matters relating to the business operations of the Debtor, including (i) day-to-day operations and duties of the Debtor; (ii) general corporate matters; (iii) negotiations with SMUD; and (iv) negotiations with One Vision Park International and other bidders. (Each of these of these project matters will be discussed separately below):

**i        Debtor Operations and Duties**

Applicant's services in this project category included (i) reviewing incoming pleadings and agreements to list Parcel A; (ii) corresponding with creditors and interested parties concerning the status of the case and the sale and with the Debtor concerning the employment of brokers and responsibilities in regard to the debtor-in-possession account; (iii) drafting notice of resolution of the U. S. Trustee's motion to convert; and (iv) research and due diligence investigation of certain potential purchasers of Parcel A.

**Sub-Category Summary**

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 17.10 | $9,405.00 |
| E. C. Young, Partner | $400.00 | 1.70 | $ 680.00 |
| M. M. Adeyemo, Associate | $275.00 | 15.00 | $4,125.00 |

30

| | | | |
|---|---|---|---|
| L. Sides, Paralegal | $185.00 | 16.70 | $3,089.50 |
| **Total Fees Requested in the Category** | | **50.50** | **$17,299.50** |

### ii. SMUD

Applicant's services in this project category included negotiating with SMUD concerning the First Settlement and Second Settlement, including conferring with Debtor, Debtor's officers and directors, the Committee concerning same. Applicant also coordinated execution of all of the documents necessary to complete the First Settlement and the Second Settlement. This project category also includes preparation of the Second Settlement and the Second Settlement Motion and coordination of payment to SMUD for the second thirty-day extension provided in the Second Settlement.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 23.10 | $12,705.00 |
| M. M. Adeyemo, Associate | $275.00 | 16.80 | $4,620.00 |
| **Total Fees Requested in the Category** | | **39.90** | **$17,325.00** |

31

### iii. Corporate

Applicant's services in this project category included researching Debtor's corporate matters in relation to the Chapter 11 filing including reviewing Debtor's corporate records to determine whether Debtor's officers and board of directors appropriately documented their approval of Debtor's bankruptcy filing. Applicant also researched the requirements for corporate approval of substantially all of Debtor's assets. Applicant prepared resolutions approving Debtor's bankruptcy filing and the sale of substantially all of Debtor's assets to ensure Debtor's compliance with corporate requirements. Applicant further researched the possibility of removing an officer and director from the corporation.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 3.70 | $2,035.00 |
| M. H. Davis, Partner | $450.00 | 20.40 | $9,180.00 |
| M. M. Adeyemo, Associate | $275.00 | 7.90 | $2,172.50 |
| S. Ghoddoucy, Associate | $275.00 | 6.70 | $1,842.50 |
| C. E. Radtke, Law Clerk | $185.00 | .40 | $ 74.00 |
| L. Sides, Paralegal | $185.00 | 2.7 | $ 499.50 |
| **Total Fees Requested in the Category** | | **41.80** | **$15,803.50** |

32

### iv.       One Vision International

Applicant's services in this project category included corresponding, researching and negotiating with One Vision International concerning offer to purchase.  This project category also includes Debtor's efforts to obtain the $200,000 deposit made by Vision Park, including preparation of the VPI Turnover OST, corresponding with counsel for Vision Park and drafting escrow cancellation instructions.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| P. W. Ito, Partner | $550.00 | 11.40 | $6,270.00 |
| M. M. Adeyemo, Associate | $275.00 | .60 | $ 165.00 |
| **Total Fees Requested in the Category** | | **12.00** | **$6,435.00** |

### g.       CLAIMS ADMINISTRATION AND OBJECTIONS.

Applicant's services in this project category consisted of corresponding with creditors concerning the listing of claims in the Debtor's schedules, reviewing incoming proofs of claims and preparation of a claims spreadsheet.

### Sub-Category Summary

Attorneys' fees related to this project billing category are set forth and described in detail in Exhibit B hereto and by this reference incorporated herein, which exhibit

33

identifies the individual professionals who performed specific services by the initials indicated below and can be summarized as follows:

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended:

| NAME | RATE | HOURS | RATE x HOURS |
|------|------|-------|--------------|
| M. M. Adeyemo, Associate | $275.00 | .70 | $ 192.50 |
| L. Sides, Paralegal | $185.00 | .20 | $ 37.00 |
| **Total Fees Requested in the Category** | | **0.90** | **$ 229.50** |

### h. LITIGATION.

As described in detail above, Debtor asserted that its deadline to close on Parcel A under the SMUD Agreement was extended by § 108(b) of the Bankruptcy Code. Applicant's services in this project category were related to the expiration of the SMUD Agreement, specifically preparation of the brief on the application of § 108(b) to the SMUD Agreement (more fully described above).

Applicant prepared the Revised Assumption Motion to assume the SMUD Agreement. In addition, at the request of the Court, Applicant prepared a brief on the application of § 108(b). While preparing the brief, Applicant and SMUD entered into settlement discussions. The result of those discussions was the First Settlement. Applicant prepared an application for order shortening time on the motion to approve the First Settlement, the First Settlement Motion and the First Settlement. Through the First

34

Case: 09-31130    Doc# 182    Filed: 09/21/09    Entered: 09/21/09 21:42:38    Page 34 of 42

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

Settlement, Debtor's deadline to close Parcel A was extended up to and including July 14, 2009.

As it became more likely that Debtor would not be able to close its purchase of Parcel A by July 14, 2009, Applicant approached SMUD regarding an additional extension and participated, along with the Committee, in negotiating an extension. Applicant negotiated and prepared the Second Settlement and obtained Court approval of the Second Settlement by drafting the Second Settlement Motion and attending the hearing on same.

Applicant further coordinated closing of the sale by corresponding with SMUD regarding the closing documents, including the schedule of costs to be paid to SMUD. Applicant successfully negotiated a substantial reduction in the amounts to be paid to SMUD at closing.

In addition, Applicant researched standing of prospective bidder to appeal and prepared a motion to dismiss appeal for lack of standing.

### Sub-Category Summary

Fees related to this project billing category are set forth and described in detail in **Exhibit B** hereto and by this reference incorporated herein, which exhibit identifies the individual professional who performed specific services by the initial of such professional and can be summarized as follows:

Professional hours expended are:

| NAME | RATE | HOURS | RATE x HOURS |
|---|---|---|---|
| P. W. Ito, Partner | $550.00 | 20.2 | $11,110.00 |
| E. C. Young, Partner | $400.00 | 16.7 | $6,680.00 |
| S. M. Colabianchi, Senior Counsel | $375.00 | 2.4 | $ 900.00 |

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

35

| | | | |
|---|---|---|---|
| A. A. White, Senior Counsel | $325.00 | 52.30 | $16,997.50 |
| M. M. Adeyemo, Associate | $275.00 | 48.0 | $13,200.00 |
| C. E. Radtke, Law Clerk | $185.00 | 21.9 | $4,051.50 |
| E. W. Chavez, Law Clerk | $185.00 | 13.4 | $2,479.00 |
| L. Sides, Paralegal | $185.00 | 10.3 | $1,905.50 |
| **Total Fees Requested in the Category** | | **185.20** | **$57,323.50** |

A curriculum vitae for each of the attorneys who devoted time to this matter during the Fee Period, and their bar admission dates, where applicable is attached hereto collectively as **Exhibit C** and by this reference incorporated herein.

| Professional | Bar Admission Date(s) |
|---|---|
| **Mark H. Davis, Partner** | December 1982 |
| **Eric C Young, Partner** | December 1987 |
| **Peter W. Ito, Partner** | May 1991 |
| **James B. Ryan, Partner** | December 1993 |
| **Sandi M. Colabianchi, Partner** | December 1997 |
| **Alice A. White, Senior Counsel** | April 1985 |
| **Megan M. Adeyemo, Associate** | October 2005 |
| **Sheirin Ghoddoucy, Associate** | December 2008 |

11.    **REIMBURSEMENT OF EXPENSES.**

Applicant has also incurred expenses in the sum of $11,724,76 during the Fee Period as itemized on **Exhibit D** attached hereto and by this reference incorporated herein.  Applicant did not charge for travel related expenses.  A summary of Applicant's expenses incurred during the Fee Period is as follows:

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

36

| EXPENSE ITEM | TOTAL |
|---|---|
| Meals (actual) | 379.15 |
| Messenger Services (actual) | 40.50 |
| Filing Fees (actual) | 52.00 |
| Telephone Charges (actual) | 288.03 |
| Outside Printing (actual) | 314.15 |
| Transcripts (actual) | 180.00 |
| Computer Research (actual) | 10,314.56 |
| Express Mail Services (actual) | 156.37 |
| **TOTAL** | **$11,724.76** |

.

12.	**PRIOR COMPENSATION.**

Applicant has not received any prior compensation from Debtor for any services provided by Applicant.

13.	**SOURCE OF COMPENSATION.**

The source of compensation to be paid to your applicant is the Sale Proceeds.

14.	**NO SHARING OF COMPENSATION.**

No compensation previously received by Applicant has been shared with any other person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in, or in connection with, this case, except with the regular members and associates of Applicant.

15.	**UNPAID CHAPTER 11 EXPENSE OF ADMINISTRATION CLAIMS.**

The only unpaid Chapter 11 expenses of administration are the claims of the estate's professionals described in Section 6 above.

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

37

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

16.  **RELIEF REQUESTED.**

By this application, Applicant seeks interim allowance and approval of payment for all attorney's fees and expenses incurred by Applicant in its representation of the Debtor during the Fee Period but not yet compensated or reimbursed.  Specifically, Applicant requests interim approval of its Chapter 11 attorney's fees and expenses incurred during the Fee Period in the amount of $480,209.00 in fees and $11,724.76 in expenses.  In view of the time expended, the responsibilities assumed, and the reputation and skill of Applicant in the field of bankruptcy and commercial law, Applicant respectfully submits that the foregoing represents the reasonable value of the services rendered.  Applicant believes that the services rendered were necessary, and that the attorneys fees requested constitute reasonable and necessary fees expended on behalf of the estate.

**WHEREFORE**, Applicant requests that this Court enter its Order (i) approving the attorneys fees incurred by Applicant in its representation of the Debtor during the Fee Period, in the sum of $480,209.00; (ii) approving reimbursement of all expenses incurred by Applicant in its representation of the Debtor during the Fee Period in the amount of $11,724.76; (iii) authorizing and directing the Debtor to pay Applicant the sum of $480,209.00 for services rendered during the Fee Period but not yet compensated; (iv) authorizing and directing the Debtor to pay Applicant the sum of $11,724.76 for expenses incurred during the Fee Period but not yet reimbursed; and (v) for such other and further relief as the Court deems just and proper.

DATED this 21st day of September, 2009.

GORDON & REES LLP

By: /s/ Peter W. Ito
Peter W. Ito
Megan M. Adeyemo
Attorneys for One Vision Park, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

39

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATION RE COMPLIANCE WITH GUIDELINES FOR COMPENSATION AND EXPENSE REIMBURSEMENT OF PROFESSIONALS

I, Peter W. Ito, am the professional designated by Applicant with the responsibility in this case for compliance with the GUIDELINES FOR COMPENSATION AND EXPENSE REIMBURSEMENT OF PROFESSIONALS AND TRUSTEES (the "Guidelines") promulgated by this court on May 1, 2008, and I hereby certify that:

(1)　　I have read the foregoing Application;

(2)　　To the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought herein is in conformity with the Guidelines, except as follows:

a.　　The Application includes three project billing categories (out of a total of eight) that exceed $20,000  Applicant has created additional project billing categories where possible, and in the Asset Disposition project category, of the twelve sub-categories, eight of those exceed $20,000.  However, given the nature of some of the services, it was not feasible in every instance to create a project billing category of less than $20,000.  Applicant believes that the Application includes project billing categories that are appropriate to the size and complexity of the case and for Applicant's role as bankruptcy counsel;

b.　　Applicant has included all of its expenses on one exhibit to the Application, Exhibit D, rather than specifying expenses for each project billing category as it is not practical to separate the expenses by project billing category;

c.　　The results in the case generally are discussed in the introductory paragraphs to the Application because there is significant overlap between entries in

40

certain project categories. In addition, providing a longer, more detailed narrative that describes the history of this case is essential to understanding the events that have occurred in this case;

(3) The compensation and expense reimbursement requested are billed at rates in accordance with practices no less favorable than those customarily employed by Applicant and generally accepted by Applicant's clients;

(4) All the time records attached to this Application are accurate and were recorded in the regular and ordinary course of business contemporaneously with the services provided; and

(5) This Application was transmitted to the Debtor with the cover letter required by the Guidelines, a copy of which is attached hereto as **Exhibit E** and by this reference incorporated herein.

I hereby certify under penalty of perjury that the foregoing is true and correct to he best of my knowledge, information and belief formed after reasonable inquiry.

*/s/ Peter W. Ito*
Peter W. Ito

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

41

**EXHIBIT INDEX**

| | |
|---|---|
| **Exhibit A** | Order Granting *Ex Parte* Application for Order Authorizing the Employment of Gordon & Rees LLP as Counsel for Debtor *NUNC PRO TUNC* to May 24, 2009 |
| **Exhibit B** | Invoice |
| **Exhibit C** | Biographical Data |
| **Exhibit D** | Expense Detail |
| **Exhibit E** | Transmittal Letter to Debtor pursuant to *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees,* paragraph 7. |

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

OVPI/1057824/7054629v.1

42