Entered on Docket
June 03, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: June 02, 2010

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 09-31130 TEC |
| ONE VISION PARK, INC., | ) Chapter 11 |
| Debtor. | ) |

**MEMORANDUM DECISION RE CLAIM NO. 36 (OHAYON INVESTMENTS, LLC)**

On May 21, 2010, the court held a continued hearing on Debtor's objection to the administrative expense status of the claim filed by Ohayon Investments, LLC. Peter W. Ito appeared for Debtor. Christopher Kuhner appeared for the Unsecured Creditors Committee. John Elstead appeared for Ohayon Investments, LLC.

Upon due consideration, the court hereby determines that the claim is not entitled to administrative expense priority status. This memorandum decision shall constitute the court's findings of facts and conclusions of law.

**FACTS**

In January 2009, Ohayon Investments, LLC (Claimant) and One Vision Park executed a prepetition agreement entitled Non-

Disclosure, Non-Circumvention, and Consulting Agreement (the Pre-Petition Agreement). The Pre-Petition Agreement entitles Claimant to a ten percent commission as follows:

> Ohayon Investments, LLC and Grant Leong shall be entitled to a referral fee equal to 10% of any amounts advanced to OVP by any Ohayon Contacts as a part of an investment, joint venture participation, lease, option, purchase, loan or any other business relationship . . . Ohayon shall also be entitled to an ongoing 10% share of any net proceeds received by OVP . . . arising out of any and all lease payments, joint venture revenues or any other form of compensation received by OVP as a portion of any business arrangement by any Ohayon Contact.

On April 30, 2009, One Vision Park (hereinafter Debtor) filed a chapter 11 bankruptcy petition. On May 15, 2009, Debtor filed its Schedules of Real and Personal Property. The Schedules show that Debtor's sole assets are: (1) an option to purchase from the Sacramento Municipal Utility District (SMUD) 1,311 acres in Solano County (hereinafter Parcel A); and (2) possible litigation claims against shareholders, directors, SMUD, and creditors.

By the end of 2008, Debtor had determined that selling Parcel A to a third party would result in the greatest return on the option. Debtor exercised the option on December 5, 2008, and thereafter paid for several extensions of the closing deadline to afford Debtor time to find a buyer.

On August 4, 2009, Debtor filed and served upon creditors,[1] an application to employ NAI BT as Debtor's exclusive agent to market and sell Parcel A. App., ¶ 23.

On August 4, 2009, Michael Ohayon filed a claim against Debtor in the sum of $2,800,000, based upon a pre-petition judgment

---

[1] Including Claimant's principal, Michael Ohayon.

against Debtor's principal, David Papera.[2]  This claim is entirely separate from the administrative claim at issue here.

On September 2, 2009, the court signed an amended order approving the sale of Parcel A to Greenport Energy Park, LLC for a total purchase price of $8,500,000.

On November 10, 2009, the court signed an order granting Debtor's application to employ NAI BT as its real estate broker, effective as of July 27, 2009.  On February 12, 2010, the court signed an order approving a stipulation between Debtor, the Creditors Committee, and NAI BT, allowing NAI BT compensation in the sum of $255,000 for its services regarding the sale of Parcel A.[3]

On January 15, 2010, four weeks after the bar date for administrative claims,[4] Claimant filed a claim seeking allowance of an administrative claim for allegedly finding the buyer that purchased Parcel A from Debtor in the chapter 11 case.  Claimant seeks compensation for such services in the amount of $850,000, the ten-percent commission specified in the Pre-Petition Agreement.

---

[2] Mr. Ohayon filed an amended general unsecured claim on January 15, 2010 in the sum of $3,034,999.98.

[3] Under the stipulation, $225,000 of this sum is allowed as an administrative expense claim and $30,000 is allowed as a subordinated, unsecured claim, payable pro-rata when the distribution to general unsecured creditors exceeds 88%.

[4] The administrative claims bar date was December 18, 2009.  The claim was also filed well after the bar date for general unsecured claims, which was September 8, 2009.  Claimant contends that it did not have notice of the bankruptcy in time to comply with these bar dates, but that contention is undercut by the fact that Ohayon himself, Claimant's principal, timely filed a general unsecured claim.

**MEMORANDUM DECISION RE CLAIM NO. 36**

**LAW**

The trustee, with the court's approval, may employ a professional person that does not hold or represent an interest adverse to the estate and that is disinterested, to assist the trustee in carrying out its duties. 11 U.S.C. § 327(a).

A professional who has not been formally appointed by the court may not be paid from the estate. In re HSD Venture, 178 B.R. 831, 834-35 (Bankr. S.D. Cal. 1995). This requirement furthers two policy goals: (1) it helps the court determine whether the parties performing professional services for the estate are disinterested; and (2) it helps the estate and the court control the expenses of administration, by barring volunteers from obtaining compensation for unnecessary services. Id.

Whether a particular party is a professional depends upon the nature of services to be performed, rather than the label placed upon the services. In re Artra Group, Inc., 308 B.R. 858, 860 (Bankr. N.D. Ill. 2003). The more central the services are to the administration of the estate, the more likely those services will be determined to be professional in nature. See In re Northeast Dairy Cooperative Federation, Inc., 74 B.R. 149, 153-54 (Bankr. N.D.N.Y. 1987);[5] see also In re That's Entertainment Marketing Group, Inc., 168 B.R. 226, 230 (N.D. Cal. 1994).

Under the particular facts of this case, Claimant is a professional person. First, the nature of the services provided by Claimant are like that of the broker employed by the estate, because the Agreement broadly afforded Claimant the authority to

---

[5] For the reasons explained in this memorandum, to the extent In re Foundation Group Systems, Inc., 141 B.R. 196 (Bankr. E.D. Cal. 1992) supports a determination that Claimant is not a professional, the court respectfully disagrees with that case.

**MEMORANDUM DECISION RE CLAIM NO. 36**

-4-

find an investor to purchase Debtor's principal asset and to receive a commission for such services. Second, because Parcel A was Debtor's primary asset, finding a buyer for Parcel A was central to the administration of Debtor's estate.

On the current record, Claimant cannot be allowed an administrative claim for professional services provided to the estate, because he has not been appointed to do so.

This defect cannot be cured by appointing Claimant at this date, because Claimant is not disinterested. 11 U.S.C. § 101(14). This is so, because Claimant's principal has filed a large pre-petition claim against the estate. See HSD Venture, 178 B.R. at 834-35 (Bankr. S.D. Cal. 1995) (prepetition creditors are not disinterested and cannot be employed by estate postpetition); see also In re Glenn Elec. Sales Corp., 99 B.R. 596 (D.N.J. 1988) (non-disinterested person is one who may have economic or practical interest that would tend to lessen value of estate or create dispute in which estate is rival).

Even if Claimant is not a professional, Claimant cannot be allowed an administrative claim, because the transaction in question was outside the ordinary course of Debtor's business, and the transaction was not authorized after notice and a hearing. 11 U.S.C. § 363(b),(c). A transaction is outside the ordinary course of business if it is unusual either in nature or magnitude. A contract to pay a "finder" ten percent of the multi-million dollar proceeds of the sale of substantially all of Debtor's assets is out of the ordinary course in both nature and magnitude. Debtor is authorized to enter into such a contract only after notice and a hearing because of the great impact on the estate of the resulting expense of administration.

**MEMORANDUM DECISION RE CLAIM NO. 36**

1  That Claimant had a pre-petition contract with Debtor cannot
 2 change the result.  First, Debtor did not assume the Pre-Petition
 3 Agreement.  Second, the post-petition bankruptcy estate is in an
 4 important sense a different entity from the pre-petition debtor.
 5 See, e.g., In re Lazar, 200 B.R. 358 (Bankr. C.D. Cal. 1996)
 6 (citing cases).  Third, it would unduly undermine control over the
 7 cost of administration to permit the existence of a pre-petition
 8 contract to substitute for the requirement that professionals be
 9 appointed by the court, or the requirement that the estate obligate
10 itself to pay for other post-petition services out of the ordinary
11 course of business only after notice and a hearing.[6]
12  Claim number 36 of Ohayon Investments, LLC is disallowed as an
13 administrative priority claim.  The court does not address at this
14 time whether the claim may be allowed as a late-filed general
15 unsecured claim, as the parties did not raise that question.

**\*\*END OF MEMORANDUM\*\***

---

[6] The estate has already paid $225,000 as an administrative expense for the broker's services related to the sale of Parcel A. Enforcing The Pre-petition Agreement, even though Debtor did not assume that Agreement, would more than quadruple the administrative cost to the estate of selling Debtor's primary asset, would cause the estate to pay twice for the same service, and would violate the well-established principle that administrative expenses should be narrowly construed to maximize the value of the estate for creditors. In re Dant & Russell, Inc., 853 F.2d 700, 706 (9th Cir. 1988), superseded by statute on other grounds as recognized by In re Ntl. Refractories & Minerals Corp., 297 B.R. 614, 618 (N.D. Cal. 2003).

**MEMORANDUM DECISION RE CLAIM NO. 36**

COURT SERVICE LIST

John C. Elstead, Esq.
The Elstead Law Firm
7460 Woodrow Dr.
Oakland, CA 94611

**MEMORANDUM DECISION RE CLAIM NO. 36**