

Signed and Filed: June 02, 2010

_____
**THOMAS E. CARLSON**
U.S. Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 09-31130 TEC |
| ONE VISION PARK, INC., | Chapter 11 |
| Debtor. | |

### MEMORANDUM DECISION RE CLAIM NO. 22 (MICHAEL OHAYON)

On May 17, 2010, the court held a hearing on Debtor's Motion for Summary Judgment re claim no. 22 filed by Michael Ohayon (the Claim). Peter W. Ito appeared for Debtor. John C. Elstead appeared for Michael Ohayon. Upon due consideration, and for the reasons stated in this memorandum, the court hereby disallows the Claim in its entirety. This memorandum shall constitute the court's findings of fact and conclusions of law.

BACKGROUND

In 2006, Michael Ohayon (Ohayon) filed a lawsuit against David Papera (Papera) in San Francisco County Superior Court. In April 2008, that suit was settled. In March 2009, Ohayon obtained a judgment against Papera in the amount of $2.8 million, after Papera

MEMO RE CLAIM 22 SUMM. JUDG. MOTION

-1-

failed to perform as required under the settlement agreement.

Papera was a founder and officer of Debtor One Vision Park (OVP). Papera was also the settlor of the Usdi Trust, a revocable trust established for the benefit of Papera's son and daughter. In November 2007, OVP issued 5,250 shares to the Usdi Trust, pursuant to a stock purchase agreement ratified by the board of directors of OVP. The stock purchase agreement contains restrictions upon the subsequent transfer of shares, but creates an exception to those restrictions for transfers between family members.

On March 13, 2009, Papera caused the Usdi Trust to transfer its shares to the Walela Trust (the Transfer). The Walela Trust is a revocable trust created by Elizabeth Papera for the benefit of Papera's son. Elizabeth Papera is Papera's ex-wife.

On March 17, 2009, Papera caused the board of directors of OVP to approve the transfer of shares from the Usdi Trust to the Walela Trust.

On April 22, 2009, Ohayon attempted to enforce his judgment against the OVP shares of the Usdi Trust, on the theory that the assets of that trust could be reached by Papera's creditors, because Papera was the settlor of the trust and the trust was revocable. This enforcement effort was unsuccessful, because the Usdi Trust had transferred the shares to the Walela Trust more than a month before.

Papera filed a chapter 7 petition in this court on June 1, 2009. The trustee in that case filed an action against the Walela Trust, seeking to avoid the March 13, 2009 transfer of OVP shares. The trustee has dismissed the action without prejudice

because it appears that OVP shares have little or no value.[1]

OVP filed a petition under chapter 11 on April 30, 2009. Ohayon timely filed a claim against OVP in the amount of $2.8 million, based on the board's March 13, 2009 ratification of the Transfer. Ohayon contends that Papera made the Transfer with the intent to frustrate Ohayon's efforts to enforce his judgment against Papera. The essence of Ohayon's claim against OVP is Ohayon's assertion that OVP actively participated in Papera's fraudulent transfer. Ohayon contends that the Transfer could not have occurred without the consent of the OVP board of directors, because OVP's bylaws required board approval of any transfer of shares, and in ratifying the Transfer at the March 17, 2009 meeting, the board conspired with Papera to effect a fraudulent transfer of the shares.

Debtor OVP filed a motion for summary judgment, seeking to have this court disallow Ohayon's claim on the basis that the Transfer was effective without the March 17, 2009 approval of the OVP board, and that Ohayon therefore suffered no damage as a result of any actions by OVP.

DISCUSSION

The original bylaws of OVP, adopted in January 2005, provide for the following restriction upon transfer of shares:

> No shareholder shall be authorized to transfer or assign any of his shares *except with the consent of the Board of Directors*, unless he has first offered said shares to the Corporation and the [sic] to the other shareholders, *in accordance with procedures that shall be adopted by the Board of Directors*.

---

[1] All the assets of OVP have been liquidated in its chapter 11 case. If the claim of Ohayon at issue here and Ohayon's claim for administrative expense are disallowed, the sale proceeds may provide a small surplus for OVP shareholders.

**MEMO RE CLAIM 22 SUMM. JUDG. MOTION**

-3-

Article VII, Section 2 (emphasis added).[2]

In November 2007, the board approved stock purchase agreements with various shareholders, including David Papera. Those stock purchase agreements establish procedures for and exceptions to the right of first refusal established in the bylaws, as the bylaws expressly authorize the board to do.

> 1. *Restrictions on Transfer.*
>
> . . . .
>
> E. *Transfer of Shares*. No Shares purchased pursuant to this Agreement, nor any beneficial interest in such Shares, shall be sold, transferred, encumbered or otherwise disposed of in any way (whether by operation of law or otherwise) by the Purchaser or any subsequent transferee, other than in compliance with the Company's right of first refusal provisions contained in Section 2 of this Agreement.
>
> 2. *Company's Right of First Refusal*. Before any Shares acquired by the Purchaser pursuant to this Agreement (or any beneficial interest in such Shares) may be sold, transferred, encumbered or otherwise disposed of in any way (whether by operation of law or otherwise) by the Purchaser or any subsequent transferee (each a "Holder"), such Holder must first offer such Shares or beneficial interest to the Company and/or its assignee(s) as follows.
>
> . . . .
>
> F. *Exception for Certain Family Transfers*. Notwithstanding anything to the contrary contained elsewhere in this section, the transfer of any or all of the Shares during the Holder's lifetime or on the Holder's death by will or intestacy to . . . (ii) the Holder's lineal descendants . . . [or] (iv) a trust or other similar estate planning vehicle for the benefit of the Holder or any such person . . . shall be exempt from the provisions of this section . . . .

Papera Stock Purchase Agreement, §§ 1, 2 (italics in original).

---

[2] The bylaws were later amended to remove this provision, but Ohayon contends that the amendment was not properly ratified by shareholders. For the purpose of this decision, I assume the original bylaws remain in effect.

**MEMO RE CLAIM 22 SUMM. JUDG. MOTION**

-4-
Case: 09-31130   Doc# 640   Filed: 06/02/10   Entered: 06/03/10 13:08:22   Page 4 of 7

The Transfer comes within the above-quoted exception to the transfer restrictions (the Family-Member Exception), because it was a transfer to a trust established for the lineal descendants of the transferor.

Ohayon does not contend that the Transfer does not come within the language of the Family-Member Exception; he contends instead that the Family-Member Exception is invalid because it is inconsistent with the original bylaws.

This argument is unpersuasive, because the same provision of the bylaws that creates the restriction on transfer of shares expressly permits the board to authorize exceptions to that restriction. The Family-Member Exception is such an exception. Neither the bylaws nor any authority cited by Ohayon states that the board may not create general exceptions to the restriction on transfer, but instead must approve each transfer on a case-by-case basis at the time of that transfer. The language of the bylaws affirmatively suggests that the board has the power to create general exceptions, in that it provides that the restriction on transfer of shares may be waived by the board "in accordance with procedures that shall be adopted by the Board of Directors." Ohayon has not produced any evidence that the framers of the bylaws intended the language of Article VII, Section 2 to have any special meaning precluding the board from adopting the Family-Member Exception.

I determine that the board was permitted to adopt the Family-Member Exception under the original bylaws, that the board approved the Family-Member Exception in ratifying numerous stock purchase agreements containing that exception in November 2007, that the

1 | Transfer was effective without board approval, and that the board's
 2 | ratification of the Transfer in March 2009 caused no harm to
 3 | Ohayon.
 4 |     Ohayon was afforded time pursuant to Rule 56(f) to do
 5 | discovery.  Ohayon has not produced any evidence that OVP
 6 | participated in Papera's alleged fraudulent transfer in any manner
 7 | other than via the board's acts on March 17, 2009.
 8 |     For the reasons set forth above, I determine that OVP caused
 9 | Ohayon no legally cognizable harm.  Ohayon's claim is therefore
10 | disallowed.
11 | **\*\*END OF MEMORANDUM\*\***

| | |
|---|---|
| 1 | **Court Service List** |
| 2 | |
| 3 | John C. Elstead, Esq.<br>The Elstead Law Firm |
| 4 | 7460 Woodrow Dr.<br>Oakland, CA 94611 |
| 5 | |

**MEMO RE CLAIM 22 SUMM. JUDG. MOTION**